NEBRASKA TELEPHONE COMPANY V. JOHN JONES.

FILED JANUARY 3, 1900. No. 9,031.

**Personal Injury:** CONTRIBUTORY NEGLIGENCE: DIRECTING VERDICT. Where the evidence of plaintiff in suit for damages for personal injury alleged to have been the result of negligence of defendant conclusively established contributory negligence of plaintiff, which was the immediate cause of the injuries, there can be no recovery, and it is error to refuse a request to charge the jury to return a verdict for the defendant.

ERROR from the district court of Sarpy county. Tried below before SLABAUGH, J. *Reversed.*

*W. W. Morsman,* for plaintiff in error.

*John P. Breen, contra.*

HARRISON, C. J.

In this, an action commenced in the district court of Sarpy county, the defendant in error sought, and recovered, a judgment for damages against the plaintiff in error, hereinafter designated as the company, the ground of the suit being the alleged negligence of the company, by reason of which the defendant in error suffered personal injuries. The petition was in part as follows:

"That some time before the accident hereinafter detailed occurred the said company constructed a telephone line along and upon the public highway through said Sarpy county commonly known as the 'Bellevue Road'— a regularly laid out and duly-dedicated public highway of said county, and one of the chief public thoroughfares of that county, running north and south across the county, and passing through the little town of Bellevue in said county; that in constructing said line said company in the usual manner placed large telephone poles in said public highway at short distances apart in said road, and strung upon said poles its lines of telephone wires, but that said company never had permission, license or right of way granted from said county or its duly authorized agents to construct said telephone line along said public highway and that in erecting said poles and wire upon and along said public highway it was from the beginning a trespasser thereon; that some time before the accident hereinafter detailed occurred the said company, desiring to remove or relocate its said line, cut down a number of said telephone poles at a point on said public highway near where the same approaches and passes the said town of Bellevue; but plaintiff alleges that in the work of cutting down and removing said poles at this point the company carelessly and negligently, and with utter disregard for the safety of public travel along said road, cut said poles off so as to leave a stump or portion of said poles extending above

the surface of the ground to the height of one foot or eighteen inches, and carelessly and negligently permitted and still permit a number of these stumps to remain in said public highway at and near said point which range in height one foot to eighteen inches; that upon the 2d day of June, 1896, plaintiff, an aged man, was driving along said public highway at the point above indicated with a wagon and team when, without fault or negligence on his part, his wagon struck one of these telephone pole stumps or projections with considerable force and the shock and tilting of the wagon occasioned thereby threw the plaintiff violently from the wagon to the ground, breaking and dislocating his arm and otherwise severely injuring him internally and causing him to suffer great pain."

The answer was, in fact, as to the portion of the petition we have quoted, a general denial. During the trial, at the close of the evidence in chief for the defendant in error, it was moved that the jury be directed to return a verdict in favor of the company, on the ground that it was affirmatively disclosed by the evidence for defendant in error that the injuries of which he complained resulted from his own negligence, or rather that there had been contributory negligence on his part. This was overruled.

At the close of the evidence the court was requested to instruct the jury that, upon the whole of the evidence, the defendant in error was not entitled to a recovery, and the verdict must be for the company. This was also refused.

Of the errors assigned for the company are these refusals to direct a verdict in its favor, the argument being that there appeared such contributory negligence by the defendant in error as precluded a recovery. The evidence disclosed that on the day the defendant in error was injured he was employed by one William Hoogeboom, and, with a team and wagon which belonged to his employer, the wagon loaded with oats, from a place

about ten miles distant therefrom, drove to South Omaha, where the oats were disposed of and the wagon loaded with baled hay. The sideboards were on the bed of the wagon, or it had on what is commonly known as the "double box," which was more than filled with the baled hay, or the top of the load was above the wagon box— so much so that the spring seat did not rest, as usually, on the sides of the wagon bed, but upon the hay. A part of the highway upon which the defendant in error traveled in going to and from South Omaha at the time in question was quite a hill—some "three hundred yards from the top to the bottom." The road in the center and to one side of the hill was rough and often wet or muddy, and the track mainly traveled was upon the other side of the highway. About halfway down the hill stood the "stump," referred to in the petition, and it was while driving down the hill on the return trip that the defendant in error was injured. He stated that he was sitting "in the spring seat on the right-hand side as I was going south." We will now quote at some length from his testimony:

"I was going south. I could not reach the brake, going down hill, and I pulled the horses out a little, and this was hard to hold. I was bracing and pulling the bit, and on the lines. I could not reach the brake. I did not see the stump. It was just about twelve inches high. Then the wheel on this side of the road, it cut down and made it lower; and it pitched me out on my head and shoulders, quicker than that [snapping his fingers]. I went on the west side of the wagon.

\*          \*          \*          \*          \*          \*          \*

"Q. I think you have answered, let me inquire again though, that you did not see this stump at the time that you ran on to it?

"A. No I did not see it at the time.

"Q. How often had you been on this Bellevue road prior to this accident?

"A. Several times.

37

"Q. State to the jury whether or not before this accident occurred you had discovered on that part of the road there a line of stumps.

"A. Yes, I knew the stumps were there. I saw them different times, especially when I went up with the buggy a time or two. This one I run over, it just missed the axletree of the buggy; and I spoke about them. At the time of coming down I did not think of the stump. I was watching the team, although I knew that they were there.

"Q. Where did the line of stumps commence that you had discovered?

"A. Right on top of the hill, and run south down. I counted five that stuck up out of the ground.

"Q. Right in the road?

"A. Right in the road, on the main wagon track. Straddled right over them.

"Q. On which side of the line is this row of stumps?

"A. On the east side of the road.

"Q. About how far should you locate them from the fence or east side of the road?

"A. These were about seven or eight feet from the fence in the road as near as I could judge.

"Q. Where did you say the main track of the road was—that is, the traveled part of the road at that time?

"A. It run right over these stumps. The other side was rough. It had been raining. This was the main traveled track—the smooth track; and I pulled out to get out in a rough track, to hold it off from the horses. They were hard to hold any way."

A portion of the cross-examination was as follows:

"Q. Then you got to this place where the injury occurred about five o'clock?

"A. About five o'clock I suppose; between four and five.

"Q. It was on the second day of June?

"A. Yes, sir.

"Q. It was broad daylight?

"A. Yes, sir.

"Q. You knew of the existence of these stumps?

"A. Yes, sir.

"Q. You had seen them frequently?

"A. Yes, sir.

"Q. And drove over them frequently; and this particular one just missed the axletree of your buggy?

"A. Yes, sir.

"Q. You spoke about it frequently? .

"A. Yes; I did.

"Q. And you say that the main track of the highway—that is the traveled track, made by the travel in the highway—was over these stumps?  Straddled right over them was the stumps, midway between the tracks of the wheels?

"A. Yes, sir.

"Q. And on the inside of the east line of the highway, how close to the east line of the highway was the row of stumps?

"A. I suppose six or seven feet from the fence on the inside of the road."

The defendant in error was recalled and we quote from the record:

"Q. I think in your testimony on yesterday you spoke of having noticed this line of stumps there, upon one of which you ran and was hurt, before this occasion when you ran on to it.  How many of the stumps are down in the beaten wagon track that you noticed?

"A. I noticed four, I think, along there in a row.  The fourth was the highest of all.

"Q. That was the one the farthest to the south?

"A. Yes, the farthest to the south.

"Q. Had you noticed the four at any time previous to the time that you were hurt or have you since discovered that there were four?

"A. Before I got hurt?

"Q. Yes.

"A. I noticed them before and spoke about them.  I said, 'Somebody will get hurt on them yet.'  I spoke about them before, and knew they were there.

"Q. Where does the top of the hill commence, with reference to this stump where you were hurt—how far away?

"A. From the top of the hill?

"Q. Yes, sir.

"A. It must be three or four hundred feet; may be more. I could not say.

"Q. Which wagon wheel was it that struck this stump?

"A. It was the left forewheel as I went south.

"Q. Upon which side of the wagon were you sitting?

"A. On the right hand side.

"Q. On this occasion when you were coming down the hill there did you notice this stump?

"A. I did not.

"Q. What was it that particularly attracted your attention?

"A. The team was high-strung, and I was trying to hold them; and I could not get hold of the brake and it drew my attention off the stump.

"Q. Were you trying to get hold of the brake?

"A. I looked for it, and I suppose I drew the team to one side.

"Q. Were you trying to reach the brake?

"A. I do not recollect.

"Q. How far down was the brake from the seat where you were sitting.

"A. I had to bend way down. I was too high to reach it good."

A part of the cross-examination upon recall was as follows:

"Q. Of course you did not see the stump at all?

"A. No, I did not see it at the time.

"Q. And was not looking for it?

"A. No, I had no time to look for it. If I had, I would not have hit it.

"Q. You were not thinking about it.

"A. No; I was not thinking about the stump.

"Q. And did not make any effort to discover it?

"A. No, sir.

"Q. And what was the thickness of the stump?

"A. Well, it was six or seven inches through, I suppose by the looks of it."

Redirect:

"Q. State whether or not you had driven on that track over those stumps before.

"A. Yes, several times, and noticed them particularly.

"Q. I mean straddled the stumps?

"A. Yes, it was the main traveled road at that time."

The defendant in error was the only witness in regard to the happenings at the time of his injuries; and the question presented is, did he disclose affirmatively such contributory negligence as to defeat a recovery of damages? We will say here that the evidence on the issue of whether the company left the stump in the road or not was conflicting, and in this connection, it was shown for the company that when it removed the poles of its old line, it had them either broken or chopped off flush with the ground, the only evidence to the contrary being the condition of the stumps at the time, some years afterward, of the injuries to defendant in error; but these matters were determined against the company by the jury, and there was probably sufficient evidence to sustain the findings. The undisputed fact that defendant in error had knowledge of the condition of the highway and the existence of the obstruction to safe travel—the stump —is not, in and of itself, conclusive against him on the issue of contributory negligence; neither is the further fact that, being possessed of such knowledge, he was, at the time he was injured, so inattentive as to not then have it in mind conclusively; nor are the two combined. A prudent man is warranted in taking some risks. But defendant in error states that the team was a spirited one. He was perched on top the hay, at a disadvantage in driving; could not readily reach the brake; was going down a steep hill, on which in the road or track there

were known obstructions which he himself had con-
cluded, as he stated, were dangerous to travelers by ve-
hicle, and he drove to one side of the regular track, plac-
ing his wagon in such a position that it was almost
certain, as the subsequent event proved, that the wheel
would strike the stump. In combination these facts con-
clusively establish a lack of such care, under all the cir-
cumstances and conditions as would be expected of or
exercised by a prudent person. It is further true that
this lack of care was of the immediate cause of the in-
juries, and without which they would not have been suf-
fered; and these things being true, he was not, under the
evidence, entitled to the verdict rendered, and the jury
should have been so instructed.

The further assignments of errors relate to matters of
which we do not deem a discussion or decision necessary
at this time; hence they will not be further noticed. The
judgment of the district court is reversed, and the cause
remanded.

REVERSED AND REMANDED.