## CITY of TULSA v. HARMAN.

No. 19774. Opinion Filed March 10, 1931.

Rehearing Denied May 5, 1931.

M. C. Spradling, City Atty., Eben L. Taylor, Felix A. Bodovitz, Asst. City Atty., Eldon J. Dick, and E. M. Gallaher, for plaintiff in error.

A. F. Moss, H. R. Young, and C. A. Warren, for defendant in error.

SWINDALL, J. This action was originally commenced in the district court of Tulsa county by Lois Lee Harman against the city of Tulsa to recover damages because of the death of her husband, William Gil-

bert Harman, alleged to have been caused by and through the negligence of the defendant. The trial was to a jury, resulting in a verdict in favor of defendant. Hereafter the defendant in error will be referred to as plaintiff, and the plaintiff in error as defendant, this being their position in the trial court.

On motion of plaintiff the trial court set aside the verdict and granted a new trial. At the time of granting the new trial, counsel for defendant requested the court to state upon which of the statutory grounds the new trial was granted. This, the trial court refused to do, stating that: "From the whole record in his opinion such action should be taken."

The several grounds of the motion for new trial are as follows:

"(1) The verdict of the jury is not sustained by sufficient evidence.

"(2) The verdict of the jury is not sustained by any evidence.

"(3) That the verdict of the jury is contrary to the evidence.

"(4) That the verdict of the jury is contrary to law.

"(5) Errors of law occurring at the trial and excepted to at the time by the plaintiff.

"(6) That the court erred in giving to the jury the following numbered instructions, and each of them, to wit: Nos. 7, 9, 10, 13, 17, and 18, and to the action of the court in giving each of said instructions the plaintiff at the time duly and lawfully objected and excepted.

"(7) Misconduct of counsel for the defendant in arguing to the jury that the negligence of the operator of the boat, McCall, must be imputed to the deceased in the event that the deceased, or any other person riding in said boat aside from the operator of the boat, directed the operator of the boat to transport the deceased and his associates to the other or south side of the lake.

"(8) Error of the court in refusing to sustain the objection of the plaintiff to the aforesaid argument upon the part of counsel for the defendant.

"(9) Error of the court in refusing, because of said improper argument of counsel, to discharge the jury and declare the trial a mistrial."

Our Code of Civil Procedure was adopted from Kansas, and the first eight statutory grounds are indentically the same as provided for in the Kansas Code.

The Supreme Court of Kansas, in Bour-

quin v. Missouri Pac. Ry. Co., 127 Pac. 770, held that:

"Where a motion for a new trial on all the statutory grounds has been sustained generally, this court on appeal will assume, in support of the ruling, that the trial judge was not able to reconcile the verdict with what he regarded as the true weight of the reliable testimony."

If our court had followed the rule announced by the Supreme Court of Kansas, it would not be difficult to review this appeal; however, this court, in James v. Coleman, 64 Okla. 99, 166 Pac. 210, laid down a different rule, and held that:

"Upon an appeal from such order, the court will review the entire record, and if the order was properly made, even though a wrong reason was given therefor, the same will be sustained."

We are certain that the trial court did not sustain the motion for a new trial on each of the several grounds stated in the motion.

In Bourquin v. Missouri Pac. Ry. Co., supra, the Supreme Court of Kansas further announced the law that:

"A motion for a new trial on several grounds is, in effect, a separate motion on each ground, and the better practice would be for the trial court, when sustaining such a motion, to state frankly on the record the specification or specifications which are upheld and those which are overruled."

This court, in Hall v. Polson, 130 Okla. 136, 265 Pac. 1068, in an opinion delivered by Mr. Justice Riley, said:

"As we view it, the trend of the decisions of this court has been too broad as applied to motions for new trial in law actions, where a jury passes upon disputed facts, and where there is a conflict in the evidence; moreover, when such a motion is sustained, we think it far better practice on the part of the trial court to state in the record the ground upon which the court sustains or overrules such a motion."

This is in harmony with the holding of the Supreme Court of Kansas in Bourquin v. Missouri Pac. Ry. Co., supra. Later the Supreme Court of Kansas, in Hughes v. Vossler, 110 Kan. 279, 203 Pac. 1107, following the suggestion made in the former decision, held that:

"If the trial court had been timely requested to indicate what grounds of the motion for a new trial were sustained and which were overruled, the trial court should have complied."

In the case at bar, the trial court was timely requested to state upon which of

the several grounds of the motion for new trial the same was sustained, and the court refused the request.

We are of the opinion the trial court should have granted the request. The Code of Civil Procedure of this state grants a litigant the right of appeal from an order granting a new trial. Counsel for a litigant has the right to know upon which one or more of the several grounds of the motion for a new trial the same was sustained, and we can see no good reason for the trial court refusing to state frankly on the record the specification or specifications which are upheld and those which are overruled; then counsel could easily determine whether or not he desired to appeal from the ruling or retry the issues. If an appeal is taken from the order granting a new trial under such procedure, the labors of this court would be materially reduced. Also, the movant might desire to file cross-specifications of error and urge that the motion should have been sustained upon grounds which are overruled and thus simplify the issues materially in the event a new trial is ordered.

The plaintiff, at page 16 of her brief, says:

"There is evidence in the case at bar that warrants the submission of this case to the jury."

Again, at page 19:

"It is true that the trial court refused to submit to the jury the issue of whether McCall was authorized by the defendant to carry passengers for hire, as an agent of the defendant, and under the evidence in the record we think the court was right. However, the court did properly submit to the jury the issue raised of whether the defendant was negligent in failing to erect barriers or guards or post signals or warnings, or in some other manner protect the deceased, its invitee."

If there is evidence in the case, as claimed by plaintiff, that warrants the submission of this case to the jury, and the court did properly submit to the jury the issues that should have been submitted, this is all the plaintiff was entitled to upon her theory of the case.

This court, in C., R. I. & P. Ry. Co. v. Zobisch, 118 Okla. 193, 247 Pac. 351, said:

"We are not unmindful of the fact that this court is slow to disturb the judgment of the trial court in granting a new trial. A party is entitled to have his day in court; both parties are entitled to this, but neither party is entitled to have more than one fair, reasonable opportunity to establish his claim or defense. To allow more would be to protract litigation to an extent which would preclude the administration of justice."

In Euclid Avenue State Bank v. Nesbit, 204 N. W. 253, the Supreme Court of Iowa, in passing upon this subject, said:

"We are constrained to hold that in any case where the trial court grants a motion or sets aside a verdict, or for a new trial on its own motion, he ought, at least on request of the party against whom the rule is made, state or record the facts which moved him to act, and failure so to do would be reversible error. Were this the only question involved in this appeal, it would necessarily result in the reversal of case without further consideration."

In Hensley v. Davidson Bros. Co. (Iowa) 112 N. W. 227, it appears that the court did not assign any reason for the grounds upon which he set aside a verdict, no request having been made by either party, and the Supreme Court of Iowa, again speaking on this subject, said:

"It should not be inferred, however, that it is any part of this court's duty to search for reasons to sustain an order for the trial when neither the nisi prius court nor the party in whose favor the ruling has been entered has taken the trouble to make the grounds thereof a part of the record. While the inherent right exists to make such a ruling, the grounds for doing so should be made to appear in the record. If the court does not do this, the party in whose favor the rule is made, in protection of the record, may insist that the ground for the rule be entered. This may be done by an appropriate motion and the action of the court made quite as intelligible as though it had waited for the parties to make up the record in the ordinary way and according to customary judicial procedure."

As said by Mr. Chief Justice Marshall, of the Supreme Court of the United States, in Osborn v. U. S. Bank, 9 Wheat. (U. S.) 738, 6 L. Ed. 204:

"Courts are mere instruments of the law, and can will nothing. When they are said to exercise a discretion it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law, and when that is discerned it is the duty of the court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the Legislature, or, in other words, to the will of the law."

This language was approved by Mr. Justice Sharp in delivering the opinion of this

court in Vickers v. Phillip Carey Co., 49 Okla. 231, 151 Pac. 1023.

Counsel for plaintiff suggests several theories upon which the trial court may have granted a new trial, but in our opinion fails to furnish a satisfactory ground to sustain the order of the court below. So we hold that where the trial court has been timely requested to indicate what grounds of the motion for a new trial were sustained and which were overruled, the trial court should comply with the request.

The defendant contends that the trial court committed error of law in overruling defendant's demurrer to plaintiff's amended petition and in its failure to sustain said demurrer, and that the trial court erred in overruling the demurrer of the defendant to the evidence of the plaintiff, for the reasons, first, that the amended petition does not state facts sufficient in law to constitute a cause of action in favor of the plaintiff and against the defendant; second, that the evidence offered by the plaintiff is insufficient to establish any actionable negligence on the part of the defendant, city of Tulsa, and that the evidence as a whole fails to show that the defendant, city of Tulsa, was guilty of primary negligence.

This issue has been briefed by counsel for the respective parties, and we feel that we should pass upon the same.

The amended petition of the plaintiff, among other things, alleges that on the 6th day of September, A. D. 1926, and for a long time prior thereto, said defendant owned, operated, and controlled a certain water works system and owned, operated, and controlled as a part and parcel of said water works system Spavinaw Lake, located about 65 miles from the city of Tulsa, and had long prior to the said 6th day of September, 1926, constructed a large high concrete dam for the purpose of creating said Spavinaw Lake and impounding the water therein for the purpose of supplying the said city of Tulsa with water, and that said lake was, on the said 6th day of September, A. D. 1926, and long prior thereto, about a mile in width and five or six miles in length, and that said dam and the part and portion thereof over which, by the design and construction of said dam, the water passed and flowed at times when more water was running into said lake than was being taken out of said lake by said waterworks system, was approximately 600 feet in width and that at said point said dam was approximately 60 feet in height, and that at the bottom of said dam where the water fell after it passed over said dam, said defendant on said date

placed, and for a long time permitted to remain, large rocks, a more particular description of which is to this plaintiff unknown.

Plaintiff further states that on the 6th day of September, A. D. 1926, and for a long time prior thereto, the said defendant charged a certain sum of money and a certain reward, moving to the said city of Tulsa, to all persons to whom it granted the right to fish in said lake, and the plaintiff further states that the said defendant was authorized by law to make and exact said charge and reward for said purpose, and that on the said 6th day of September, 1926, the said defendant had in its employ, among other persons, Robert McCall, and had authorized and empowered and directed the said Robert McCall to collect from all persons who desired the right and privilege of fishing in said lake the charge theretofore fixed and demanded by the said city of Tulsa for said privilege, and that the said McCall had been so authorized and empowered for a long time prior to the said 6th day of September, 1926, and plaintiff further states that on the said 6th day of September, 1926, the city had furnished to the said McCall a boat in which the said McCall for hire and reward transported persons from one point to another around and upon said lake.

The plaintiff further states that on the said 6th day of September, 1926, and at about the hour of 7:15 o'clock a. m. of said day, the water running out of said lake passed over said dam for a distance in the easterly and westerly direction of approximately 650 feet, and that the depth of said water for said width was for approximately 650 feet about 19 inches, and that the depth of said water on said date and the width and distance along and across said dam over which the same was passing was not abnormal, unusual, or extraordinary, but had occurred many times before said date.

Plaintiff further states that on the said 6th day of September, 1926, the said William Gilbert Harman paid to the said McCall and to the city of Tulsa, as represented by the said McCall, the usual and customary fee and charge exacted and demanded for the right and privilege of that day fishing in said lake, and had had issued to him by the said city of Tulsa its written permit granting and awarding to the said William Gilbert Harman said right and privilege, and the plaintiff further states that on said date her said husband had contracted orally to and with the said defendant to be transported and conveyed by it and the said McCall from a point on the

easterly side of the portion of said dam where the water was running over said dam, in a boat then owned by the said city of Tulsa and operated by the said McCall for the use and benefit of the said city of Tulsa, and in a boat furnished to the said McCall by the said city of Tulsa for said purpose, to a point on the west side of said lake for a valuable consideration, and the plaintiff states that the said deceased had so contracted with the said McCall and the said defendant expressly and impliedly, and that thereupon the said deceased and three other persons got into said boat at the place assigned to them by the said McCall and that the said McCall thereupon undertook to drive, run, and operate said boat across said lake from the aforesaid point to the westerly side of said lake, and that while the said McCall was attempting to so convey the said deceased and the other passengers in said boat the said boat was pushed, shoved, washed, driven, and thrown by the current of the water passing over said dam over a point on said dam about 300 feet from the easterly point on said dam where said water was flowing thereover, and thereby said boat and all of the occupants thereof, including the said deceased, were thrown upon the rocks and into the water 60 feet below, and that thereby said deceased was injured and from said injuries, within a few minutes thereafter, died.

Plaintiff further states that for a number of years prior to the said 6th day of September, 1926, said defendant had issued to many hundreds of persons daily permits and licenses authorizing and permitting such persons to fish at any and all points on and around said lake, and that during certain seasons of the year, and particularly the month of September of each year, for a number of years hundreds of persons had daily under said permits and licenses from the said defendant fished at all points on and around said lake, and that on holidays for a number of years hundreds of persons, having had issued to them such permits and licenses, fished at all points on and around said lake, and for said object of fishing many hundreds of persons, on all such holidays and other mentioned occasions, traveled by boat of the kind and character of the boat furnished to the said McCall by the said city and other kinds of boats kept upon said lake, over, across, and around said lake and over and across the part and portion of said lake over which the water was moving and flowing near said dam on the said 6th day of September, 1926, and of all of the foregoing facts concerning the number of persons to whom said permits

and licenses had been issued and were issued on the said 6th day of September, 1926, and of the movement of such persons in boats and of the kind of boats in which they moved over and across said lake and over and along and across the portion of said lake near said dam over which said water was flowing, on the said 6th day of September, 1926, the said defendant had full, complete, actual, and constructive notice and knowledge, and that by reason of all of the foregoing said defendant, in the exercise of the care due the deceased, as such invitee, and such holder of said permit, was compelled to anticipate the presence of the said deceased upon the part and portion of said lake over which he was moving and being transported at the time said boat became involved in and under the control of the said swiftly moving current near said dam.

Plaintiff further states that the said defendant and its agent, servant, and employee, the said McCall, were guilty of actionable negligence, for which the said defendant is responsible, which directly and proximately caused the aforesaid injuries resulting in the death of the said deceased, (1) in that the said McCall in the operation of said boat carelessly and negligently permitted said boat to become involved in and subjected to the swiftly moving current of water passing over the aforesaid portion of said dam and to be carried by said swiftly moving current over the said dam and onto the rocks and into the water below said dam, and (2) in that the said McCall, acting as the servant, agent, and employee of the said defendant, carelessly and negligently failed, neglected, and refused to drive, run, and operate said boat over a route and by a direction so far removed from the said dam that the swiftly moving current of water passing over said dam could not involve and control the movements and direction of said boat, and (3) in that the said defendant in the construction of said dam and the part and portion thereof over which said water was on the said 6th day of September, 1926, flowing and passing, carelessly and negligently failed, neglected, and refused to put or place any barrier or rail of any kind or description which would prevent a boat involved in the swiftly moving current from passing over said dam; and (4) in that the said defendant carelessly and negligently failed, neglected, and refused to place or put over, across, and along said portion of said dam over which said water was passing on said 6th day of September, 1926, any barrier, rail, or contrivance to which a person in a boat involved in and under the control of

said current and about to pass over said dam, could catch, hold, and prevent his being thrown and projected from the top of said dam to the rocks and water below said dam; and (5) in that the said defendant carelessly and negligently failed, neglected, and refused to keep upon, around, and about said dam and the part and portion thereof over which said water was passing on the said 6th day of September, 1926, any person to warn these persons who had been licensed and permitted to fish in the waters of said dam, and traveling from one side of said dam to the other, of the swiftness of the current of water flowing over said dam and of all the dangers incident to and attending a boat attempting to cross the current of said water at or near said dam; and (6) in that the said defendant had carelessly and negligently failed, neglected, and refused to place or erect near or around said dam any signs or words or devices indicating the danger of permitting a boat in which persons were riding becoming involved and under the control of said swiftly moving current at points and places near to said dam, and (7) in that the said defendant carelessly and negligently failed, neglected, and refused to erect or place longitudinally or horizontally on said dam any barriers, rails, devices, or obstructions to prevent a boat involved in or subject to the swiftly moving current from passing over and being carried over the part and portion of said dam over which the water was on said date flowing. And (8) in that because of the aforesaid acts of negligence and because of the commingling and concurrence of the aforesaid acts of negligence the said deceased was injured and killed as aforesaid. And (9) in that the defendant carelessly and negligently failed and neglected to place and install near to said spillway of said dam any sort or kind of a float, raft, or buoy to prevent persons traveling across said lake in boats from becoming involved in the current of said stream flowing over said spillway and being carried by said current over said spillway.

We have numbered the several acts of negligence charged in plaintiff's amended petition from 1 to 9, inclusive, in order that we may better discuss the issues in this case.

As stated before, the plaintiff at page 19 of her brief, says:

"It is true that the trial court refused to submit to the jury the issue of whether McCall was authorized by the defendant to carry passengers for hire, as an agent of the defendant, and under the evidence in the record we think the trial court was right."

So this eliminates from our consideration the first two acts of negligence set forth in plaintiff's amended petition and leaves for our determination the issue of whether or not the remaining acts as alleged in the amended petition charge actionable negligence on the part of the defendant directly and proximately causing and resulting in the death of the deceased.

The evidence shows that the deceased had fished in Spavinaw Lake at intervals for more than one year and that he knew that there was a very heavy rain in the vicinity of the lake on the day preceding his death, and that there was a rise of about 12 inches of water in the lake, and that sometimes water would not flow over the spillway and then again at times it flowed over the spillway about four inches deep, and the greatest flow over the spillway at any time prior to September 6, 1926, was about 12 inches, and on that date the water was flowing over the spillway from 12 to 15 inches. The deceased had fished from the dam the evening before, and also knew the condition of the water flowing over the spillway at the time of the accident. At the time he requested McCall to row him across the lake, he was in a place of safety near the spillway and knew the water was flowing over the same, and the approximate depth of the water going over the spillway.

Plaintiff cites authority from this state and many other states holding that it is the duty of a municipality to keep its streets and sidewalks in a reasonably safe condition for public use for ordinary modes of travel, day or night; also, the duty of a railway company in the operation of its trains to ring its bell and sound its whistle in approaching a highway crossing; and contends that a similar duty rests upon a city in maintaining its parks and upon the defendant in this case relative to persons fishing at Spavinaw Lake.

We agree with plaintiff that it was the duty of the defendant to keep Spavinaw Lake in a reasonably safe condition for the benefit of all persons using it.

However, the rule as to the liability of a city or a railway company for negligence where the injured party has knowledge of the defective condition of the street or sidewalk, or sees or hears the approaching train in time, by the exercise of ordinary care on his part to avoid the injury, is very different from what it is in cases where the injured party does not possess such knowledge. This state and the other states that have

passed upon this issue seem to be almost uniform in holding that an injured party will not be permitted to recover damages where he did in fact fully appreciate the peril; so, in respect of such perils as may be said to be patent or obvious, there is no obligation to give any sort of warning. (20 R. C. L. par. 27.)

(1) There can be no actionable negligence in the absence of some duty which has been neglected or violated. (45 C. J. 639.)

(2) The duty to keep premises reasonably safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee and would not be observed by him in the exercise of ordinary care.

(3) The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of ordinary care. (45 C. J. 837. par. 244.)

"If a person knows there is a dangerous place in a sidewalk, and he attempts to use the walk and in consequence of the darkness of the night or by reason of weakened eyesight he is unable to accurately determine the exact location of the point of danger, he has no reason to complain of any injury he may sustain by reason of the fact that he was unable to cross the dangerous place in safety." Pittman v. City of El Reno, 4 Okla. 638, 46 Pac. 495.

We are here considering the duty the defendant owes to adult persons.

"When an adult or a person of the general intelligence of an adult knows or ought reasonably to know facts, he is presumed to comprehend and appreciate danger incident thereto." Secard v. Rhinelander Lighting Co. (Wis.) 133 N. W. 45.

If history is true, we read that the bottom of the ocean is strewn with ships that sailed once too often or ventured once too far. An accident—a misfortune.

In the case of Indianapolis Water Co. v. Harold, 83 N. E. 993, the Supreme Court of Indiana said:

"The perils of deep water are instinctively known, and if it be insisted that this boy, nine years of age, did not possess such ordinary discretion as fairly to appreciate his danger, then it may be urged with properiety that he should not have been allowed to go in the vicinity of the canal attended only

by a companion still more youthful. In determining a claim of legal responsibility for a misfortune, sad and deplorable as it may be, we must be guided by established principles, and not led by mere sentiment independent of the law. Cases closely resembling this have frequently engaged the attention of the courts, and the decisions are practically harmonious that upon the facts here shown there can be no recovery." (Citing numerous authorities.)

"Where the danger to the plaintiff was visible and such that no warning was needed to call it to his attention, and where in placing himself in the position in which he did prior to his injury he violated the plainest laws of nature, laws learned in childhood, he is guilty of contributory negligence." Culver Const. Co. v. Ernest F. McCormack, by Next Friend, 114 Ill. App. 655.

In the case of Holland, Administrator, v. Tenn. Coal, Iron & R. Co., 91 Ala. 444, 8 So. 524, the Supreme Court of that state said:

"The evidence tended in some degree to show two distinct elements of danger incident to the work upon which the plaintiff's intestate was engaged when the injury was suffered—one open to ordinary observation and capable of being measured and judged of by men of no special knowledge or instruction in the premises; and the other latent in character, with nothing which could be seen and understood by the unskilled and uninstructed to give warning of its presence, or suggest means of avoiding it. The boil of iron, while its lower part had sunk down considerably—two and a half or three feet, maybe—into the earth, yet protruded above the surface, and was visible to those engaged in cutting the trench. It was common knowledge, appreciated by inexperienced as well as experienced persons, that if the ditch was open entirely up to the melted mass, its bottom being below the lowest estimated point of the boil, the iron would immediately flow into and along the trench, thus imperiling those who should be in there at the time. This was the open and unobscured danger which was sought to be guarded against by leaving a wall of earth between the trench and the boil of from eight to twelve inches thick. the purpose being to break down this wall by piercing it with a long crow-bar after the laborers had left the trench. Of such a patent danger there was no duty on the defendant to give the employees warning."

In the case of Wheat v. St. Louis, 179 Mo. 572, 78 S. W. 790, we find this language:

"The plaintiff in this case knew of the obstruction in the street, and knew that by the exercise of ordinary care he could avoid striking it while traveling along the street. The contention of the plaintiff that he had a right to have his mind so engrossed in his business that he did not think of the ob-

struction, or thought he had passed it, is wholly untenable. Persons traveling on a highway are charged with a duty to exercise reasonable care to observe and avoid obstructions and defects. They have no right to be so engrossed in their own affairs as to be negligent of their own safety."

As was well said by Campbell, Ch. J., in Hutchins v. Priestley Express Wagon & Sleigh Co., 61 Mich. 252, 28 N. W. 85, in speaking of a man who walked into an elevator shaft, instead of a door close to it:

"The only explanation of his conduct is—what there is no difficulty in gathering from his own testimony, although he does not seem to be aware of it—that he is one of those persons who pay little heed to their surroundings, and go hither and thither on their errands absent-minded, or thinking only of some particular object, and shutting their eyes to everything else. Such inattention is sometimes dangerous to the person himself, and quite as often to his neighbors. It is a want of that ordinary care which the safety of society requires all sane persons of mature age to exercise, and for which they are civilly responsible. Business could not be carried on without this requirement."

The rule has undergone review in other jurisdictions. In Cowie v. Seattle, 22 Wash. 659, 62 Pac. 121, the Supreme Court of Washington held that a person who is perfectly familiar with the condition of a sidewalk in which a defect exists has no right, while using it, to act on the ordinary presumption that it is in good condition.

In Cloney v. Kalamazoo, 124 Mich. 655, 83 N. W. 618, the syllabus is as follows:

"In an action for injuries to a pedestrian caused by his stepping into an unguarded excavation made in a cross walk of a city street in tearing up the pavement of the street for the purpose of repaving, it appeared that plaintiff knew that the work was being done at or near the crossing where the accident occurred, and, having seen the work going forward, must have been aware that such excavations were being made, and, though it was at night, he could have readily seen the excavation before stepping into it, as there was an arc light hanging over the street near such point, besides other lights in the vicinity. Plaintiff testified that he was observing a team at the time, and that he was not aware that the work was being done exactly at the crossing. Held, that a verdict should have been directed for the defendant city."

To the same effect are Dale v. Webster County, 76 Iowa, 370, 41 N. W. 1, where the plaintiff knew of the defect, and walked along without looking where he was going; Tuffree v. State Center, 57 Iowa, 538, 11 N. W. 1, where the plaintiff drove in one direction, and was looking and talking to persons in another direction; Tasker v. Farmingdale, 91 Me. 521, 40 Atl. 544, where the plaintiff was absorbed in looking at an electric car, and gave no thought to the dangers on the road, and drove a wheel of her conveyance over the end of a culvert; Gilman v. Deerfield, 15 Gray, 577, where the plaintiff knew of the defect in the highway, and while thinking of something else, and temporarily unmindful of the defect, drove into it; Nebraska Teleph. Co. v. Jones, 59 Neb. 510, 81 N. W. 435, where the plaintiff knew of the defect, and, while thinking of something else, drove over a stump in the road.

After quoting the above mentioned cases, the Supreme Court of Missouri in Wheat v. St. Louis, expressed the views of that court in this language:

"In short, the rule is supported, not only by the almost universal trend of authority, both English and American, but also by the plainest principles of right and justice. While the city owes the citizen the duty to keep the highways reasonably safe for persons to pass over, the citizen owes the city the duty to use his God-given senses, and not to run into obstructions that he is familiar with, or which by the exercise of ordinary care he could discover and easily avoid."

Wheat v. St. Louis is followed in Waldmann v. Skrainka Const. Co., 233 S. W. 242, in which the Supreme Court of Missouri held:

"A traveler on a public street or sidewalk may ordinarily presume that the way is clear and in good condition, but, if he knows that it is torn up or obstructed by public work, he cannot go forward relying on such presumption, but must exercise his faculties to discover the dangers, and, if he fails to do so, and is injured thereby, he cannot recover, though the public authorities or contractor may have been negligent."

In Wilson v. St. Louis-S. F. Ry. Co., 141 Okla. 108, 283 Pac. 999, this court approved three instructions given by the trial court relative to duty of the injured party to use his senses of sight and hearing, as follows:

"You are further instructed that a railroad track is of itself a warning of danger and one who attempts to cross it must exercise that degree of care which an ordinarily prudent person would exercise under like circumstances. As to what is ordinary care depends upon surrounding circumstances, but it must be such care as is commensurate with a known danger. Thus, if one attempts to cross a railroad track where his view is obstructed by embankments, trees, weeds, or shrubbery of any character, he would be required to exercise a greater de-

gree of care than he would if he were crossing a railroad track where there were no obstructions."

Also that:

"You are instructed, therefore, that it is the duty of a person about to cross a railroad track to make vigilant use of his senses in order to ascertain if there is a train approaching, and it was the duty of the deceased, on approaching the track of the defendant railway company, to look and listen for approaching trains before attempting to cross said track, or before putting himself in a place of danger, and it was his duty to keep his faculties in active exercise and not to permit his attention to be diverted from the danger before him, and this duty rested upon him at all times as he was approaching the railroad track and until he reached a place of safety beyond same."

Again:

"You are further instructed that if you find from the evidence herein that the deceased, before driving upon the defendant railway company's track on which the train was approaching, could have, with the exercise of ordinary care, seen the approaching train, or if he could have, with the exercise of such care, heard the same as it moved along the track, and that he failed to look and listen and failed to use the care that an ordinarily prudent person would have exercised under like circumstances, and you find that such failure proximately contributed to his injury, then, and in that event, plaintiff cannot recover herein and your verdict should be for the defendants."

In that case, there was an issue of fact as to whether or not the approaching train might have been discovered by the exercise of ordinary care on the part of the injured party.

In the case of Hines, Director Gen. of R. R., v. Dean, 96 Okla. 107, 220 Pac. 860, the trial court instructed the jury that the defendant was charged by a statute with the duty of giving certain signals, and if the jury believed defendant failed to give such signals. the plaintiff would be entitled to recover as a matter of law, unless the jury found that the plaintiff was guilty of negligence which contributed to the injury. This court held that the instruction was erroneous, and in passing upon the same said:

"In order to constitute actionable negligence there must exist a duty on the part of the party charged, and a failure of the party charged to perform that duty, and the existence of injury which is the proximate result of failure to perform such duty. The instruction charged the jury that the plaintiff would be entitled to recover as a matter of law if the defendant failed to

perform the duty required by statute relative to giving signals, and did not advise the jury that it was necessary that this failure to perform a statutory duty must have been the proximate cause of the injury to the plaintiff. The instruction was therefore erroneous."

In St. Louis & S. F. R. Co. v. Hess, 34 Okla. 615, 126 Pac. 760, this court said:

"It is a well-established rule that in a suit for damages for personal injuries, although the defendant may be shown to have been negligent in some manner, yet, unless the negligence so shown was the proximate cause of the injury complained of, no recovery can be had on account of such negligence."

In Atchison, T. & S. F. Ry. Co. v. Dempsey, 105 Okla. 221, 232 Pac. 375, this court held that:

"Where the plaintiff fails to show primary negligence or breach of duty on the part of defendant, the judgment should be for defendant."

In the case of Smith v. Clark, 125 Okla. 18, 256 Pac. 36, this court announced the rule that:

"A demurrer to plaintiff's evidence in a personal injury action ought to be sustained, unless it is reasonably apparent that the injury suffered by the plaintiff is the causal effect from some wrongful act of the defendant, in violation of a legal duty owing to the plaintiff."

This court has repeatedly held:

"The mere fact that an injury occurs carries with it no presumption of negligence. It is an affirmative fact for the injured party to establish that the defendant has been guilty of negligence." Jenkins v. Davis, 111 Okla. 191, 239 Pac. 135: New v. Bradshaw, 89 Okla. 205, 214 Pac. 557; Chicago. R. I. & P. Ry. Co. v. Tate, 57 Okla. 215, 156 Pac. 1182; St. Louis & S. F. Ry. Co. v. Fick, 47 Okla. 530, 149 Pac. 1126.

"To entitle plaintiff to recover damages in an action for negligence, he has the burden of proving by a preponderance of the evidence negligence of defendants, and that the negligence alleged and proven was the proximate cause of his injury." Lusk v. White, 58 Okla. 773. 161 Pac. 541; Armstrong v. City of Tulsa, 102 Okla. 49, 226 Pac. 560: Oklahoma Paper Co. v. Reid, 102 Okla. 220. 228 Pac. 978; A., T. & S. F. Ry. Co. v. St. L. & S. F. Ry. Co., 41 Okla 80, 135 Pac. 353: C., R. I. & P. Ry. Co. v. Duran, 38 Okla. 719, 134 Pac. 876.

"Where plaintiff seeks to recover for damages suffered by reason of defendant's negligence, and the acts of negligence are specifically set forth in the petition, the burden of proving the negligence as alleged is upon the plaintiff." Gulf, C. & S. F. R. Co. v. Harpole, 111 Okla. 301, 239 Pac. 609.

"Where the evidence fails entirely to show primary negligence on part of defendant. demurrer to plaintiff's evidence should be sustained." Lancaster v. St. Louis & S. F. Ry. Co., 128 Okla. 176, 261 Pac. 960; Shuck v. Davis, 110 Okla. 196, 237 Pac. 95; Chicago, R. I. & P. Ry. Co. v. Wainscott, 103 Okla. 187, 229 Pac. 808; Lakey v. North McAlester Coal Co., 98 Okla. 130, 224 Pac. 309; Turner v. Durant Cotton Oil Co., 96 Okla. 31, 219 Pac. 892.

In the case of C., R. I. & P. Ry. Co. v. Barton, 59 Okla. 109, 159 Pac. 250, this court said:

"Negligence cannot be based upon the failure of those in charge of a train to ring the bell and sound the whistle, where the plaintiff pleads and proves that while in a position of safety he knew the train was approaching."

In M., K. & T. Ry. Co. v. Gilbreath, 49 Okla. 681, 154 Pac. 539, this court said:

"It seems to us in such circumstances that negligence cannot be based upon the failure of the engineer to ring the bell or sound the whistle to warn the trackmen of the approach of his train, when it was obvious to him that they had knowledge of this fact."

In the case of Midland Valley Railroad Co. v. Graney, 77 Okla. 54, 185 Pac. 1088, this court said:

"The provision of the Constitution (sec. 6, art. 23) under which the defense of contributory negligence shall be submitted to the jury, does not apply to the primary negligence because of which a recovery is sought, and where there is no evidence reasonably tending to show that the defendant is guilty of negligence, it is error for the trial court to submit the issue to the jury."

In District of Columbia v. Moulton, 182 U. S. 576, 45 L. Ed. 1237, that court said:

"The question of negligence or no negligence is one of law for the court, where but one inference can reasonably be drawn from the evidence."

In the case of Philadelphia, W. & B. R. Co. v. Fronk. 10 Atl. 205, the Supreme Court of Maryland, in passing upon the duty of the trial court to determine the issue of negligence or no negligence, quoted with approval from a decision delivered by Lord Chancellor Cairns, in Metropolitan Ry. Co. v. Jackson, 3 App. Cas. 197, as follows:

"The judge has a certain duty to discharge, and the jurors have another and a different duty. The judge has to say whether any facts have been established by evidence from which negligence may be reasonably inferred; the jurors have to say whether from these facts, when submitted to them, negligence ought to be inferred; and it is of the greatest importance in the administration of justice that these separate functions should be maintained, and maintained distinct. It would be a serious inroad on the province of the jury if, in a case where there are facts from which negligence may be reasonably inferred, the judge were to withdraw the case from the jury upon the grounds that, in his opinion, negligence ought not to be inferred; and it would, on the other hand, place in the hands of the jurors a power which might be exercised in the most arbitrary manner, if they were at liberty to hold that negligence might be inferred from any state of facts whatever."

Under the circumstances of this case, we are forced to conclude there was no legal duty due to the decedent violated by the defendant, and that, under the authorities above cited, there was no primary negligence of defendant shown by the plaintiff, and while it was a regrettable accident, we are compelled to hold there was no actionable negligence shown, and the trial court should have sustained the demurrer to the sufficiency of the evidence of the plaintiff. The cause is therefore reversed and remanded to the district court of Tulsa county, with instructions to sustain the demurrer of the defendant to the sufficiency of the plaintiff's evidence, and render judgment in favor of the defendant for its costs.

LESTER, C. J., and RILEY, HEFNER, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., and KORNEGAY, J., dissent. CULLISON, J., absent.