## AMERICAN CENTRAL INSURANCE CO. et al. v. BRENNER.

No. 25234.    June 4, 1935.

Rehearing Denied Oct. 1, 1935.

Rittenhouse, Webster & Rittenhouse, for plaintiffs in error.

Macdonald & Files and Donald H. Waid, for defendant in error.

PER CURIAM. This appeal is from the judgment of the trial court sustaining a motion for new trial. The cause of action stated in the petition, omitting formal allegations of incorporation and ownership, is as follows:

"(3)    That at the time of issuance of said policy and continuously thereafter up to and including the time of the fire hereinafter mentioned the said Mary L. Brenner, the insured and plaintiff herein, was the owner of the said property so insured, said property being described as a certain two-story brick mercantile building situated on lots seven (7) and eight (8) in block thirty-five (35), Con. No. 788 (Map No. 1009) in the city of Shidler, state of Oklahoma.

"(4)    That on the 18th day of March, 1931, at Shidler, Okla., for valuable consideration, the said defendants, by their agent, John Casselman, duly authorized and licensed to act as such agent, did then and there countersign and issue said policies of insurance whereby the said defendants herein insured the said property, heretofore described, from the 18th day of March, 1931, at noon (standard time) against all direct loss or damages by fire and lightning, except as provided in said policies of insurance, to an amount not to exceed $4,000 on each of said policies.

"(5)    That the said agent did then and there make his daily report on each of said policies so written to said defendants, a copy of which is hereto attached, marked exhibits 'A' and 'B,' and made a part hereof.

"(6)    That the said policies of insurance as issued were the standard form as required by the laws of the state of Oklahoma, but for reasons hereinafter stated this plaintiff is without a copy of said policies of insurance, and for said reasons is unable to attach hereto or make a part hereof copies of said policies of insurance. That said defendants each have copies of said insurance policies so issued to them.

"(7)    That the policies of insurance issued by said John Casselman, as agent of the defendants herein, were held by the said agent to be delivered to the said plaintiff herein, Mary L. Brenner, when called for. That the said plaintiff has made frequent demands upon the said agent to deliver said policies of insurance, but that said John Casselman wholly fails, neglects to so deliver the said policies of insurance and states that he does not have the same in his possession, but that the same were taken from his office in Shidler, Okla., by a representative of said defendants after the loss herein complained of occurred, without the knowledge or consent of this plaintiff.

"(8)    That on the 26th day of March, 1931, said property heretofore described was greatly damaged and in part destroyed by fire, a statement of said loss is hereto attached, marked exhibit 'C', and made a part hereof.

"(9)    That the plaintiff has sustained a loss by fire as aforesaid in the amount of $1,843.30.

"(10)    That the plaintiff on the 4th day of April, 1931, gave written notice to said defendants that the said property was partially destroyed by fire on the 26th day of

March, 1931, and asked that they appraise said damage. A copy of the written notice is hereto attached, marked exhibit 'D' and 'E', and made a part hereof.

"(11) That the defendants failed and refused to appraise said damage or loss to the property sustained by fire and still refuse to do so, and denies that it is liable to the plaintiff in any sum whatever under said policy or on account of said loss.

"(12) That the defendants or either of them have not paid said sum of $1,843.30 to the plaintiff, nor any part thereof.

"Wherefore, your petitioner prays judgment against the defendants, the American Central Insurance Company, and the Insurance Company of North America in the amount of $1,843.30, and ' for such other and further relief as is just and equitable."

The evidence developed at the trial that Mary L. Brenner, through her husband acting as her agent, employed W. P. Gover to manage and collect rent on a two-story brick mercantile building owned by her in the town of Shidler, Okla. Gover was president of the American Exchange Bank and was also engaged in the fire insurance business. In addition to collecting her rent and superintending her property generally, Gover kept the fire insurance in force on the property, paying himself the premiums due from funds deposited to Mrs. Brenner's credit in his bank.

In November, 1930, he sold his interest in the bank and his insurance business to John Casselman, and at the same time turned over the affairs of Mary L. Brenner to Elwood Hester, an employee in the bank. Gover ceased then to be actively connected with the affairs of the bank as well as the insurance agency. This arrangement was confirmed by Mr. Brenner, the plaintiff's husband.

In March, 1931, the insurance on the Brenner property had been canceled or expired, and it had become necessary to seek and obtain new insurance. Difficulty had been experienced in obtaining insurance on property in Shidler. This was true of the Brenner property; at least one company had canceled insurance on the property and another had refused to renew an existing policy.

Casselman, at the request of Hester, wrote on the usual form two policies, one in the American Central Insurance Company and another in the Insurance Company of North America, covering the Brenner property.

These policies were not countersigned by Casselman as agent for the companies, nor were they delivered to Hester, but retained by Casselman and filed in his insurance cabinet. No premiums on the policies were paid, though after the fire Mrs. Brenner sent Casselman a check which he deposited in his bank to her credit. The usual report of the execution of the policies by local agents made on insurance written was rendered to the Oklahoma Auditing Bureau, and notations of the amount of premiums on the policies was made.

Casselman testified that in making the report to the Audit Bureau, he was trying "to see if the insurance would stick." Experiencing difficulty in getting insurance on property in Shidler, he had attempted this method of ascertaining from the companies whether or not the particular insurance was acceptable. If accepted he was to countersign and deliver the policies.

The Brenner property was damaged by fire on March 26, 1931. Due demand was made on the insurance companies, and upon their refusal to pay this action was brought.

After a trial of the case before a jury the district court sustained a demurrer to the evidence, but later sustained a motion for new trial. The motion embraced the following grounds:

"(1) Error of law committed at the trial.

"(2) That the court erred in sustaining the demurrer of the defendants at the close of plaintiff's evidence, said order being contrary to fact and law.

"(3) Error in admitting incompetent, irrelevant and immaterial evidence and testimony over the objection of the plaintiff."

It is a well-established rule that a motion for new trial is addressed to the sound discretion of the trial court, and an order granting a motion for a new trial will not be disturbed on appeal unless the trial court abused its discretion. Billy v. LeFlore Gas & Electric Co., 166 Okla. 130, 26 P. (2d) 149.

This, however, is a legal and not an arbitrary discretion, and where the questions presented in the motion for new trial are purely law questions, and the court renders an erroneous judgment by reason of an erroneous conception of the law, then the order should be reversed. City of Tulsa v. Harmon, 148 Okla. 117, 299 P. 462.

This action was brought upon the theory

634

of the existence of a written contract of insurance, but the evidence not only establishes that there was no such contract, but makes it clear that no agreement had been made. The most that can be said of the transaction is that Casselman was attempting to obtain insurance on the Brenner property. He did not countersign the policies for the reason that he was not certain that the insurance would be acceptable by his companies. Section 10554, O. S. 1931, is as follows:

"No policy of insurance shall be issued or delivered in this state by any foreign insurance company licensed to transact business in this state except through an agent who shall be a resident of this state and holds a certificate of authority for the kind of insurance affected by such policy, which shall be countersigned by a policy-writing agent."

Section 10556, O. S. 1931:

"No fire insurance company shall issue fire insurance policies on property in this state other than those of the standard form herein set forth, except as follows: (1) A company may print on or in its policies its name, * * * the names of its officers and agents, the number and date of the policy, and if it is issued through an agent, the words 'this policy shall not be valid until countersigned by the duly authorized agent of the company at _____'."

In Fidelity & Casualty Co. v. Walton, 24 Okla. 671, 104 P. 909, it is held:

"That a policy of life insurance shall be countersigned by the agent of the company before it shall become a valid obligation is a stipulation that the company has a right to make, and the completion of the contract with the signature of such agent during the lifetime of the insured is essential to the existence of an obligation which can be enforced against the company."

This is not a case where the terms of the contract were fully agreed to and the signature of the agent unintentionally omitted. There was no stage in the transaction where the minds of the parties met and the contract consummated. Casselman never signed or delivered the policies. No premiums were paid. He intended only to use the written form that he had prepared in making a binding contract when accepted by the companies concerned. Because of the uncertainty that the companies would accept the risk, Casselman, as the agent, deliberately refrained from completing the policies. It is clear that he had no intention to enter into a binding obligation for his companies.

The proof in this case does not sustain the cause of action. It not only failed to show the written contract of insurance which was essential under the allegations of the petition, but entirely established that no insurance contract existed at all. Where the proof does not sustain the allegations of the petition, but clearly establishes that the plaintiff is not entitled to prevail on the cause of action alleged, it is the duty of the trial court to render judgment for the defendants. The granting of a new trial in such a case is error.

Reversed.

The Supreme Court acknowledges the aid of Attorneys Louis A. Ledbetter, B. F. Davis, and R. S. Norvell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Ledbetter, and approved by Mr. Davis and Mr. Norvell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, PHELPS, CORN, and GIBSON, JJ., concur.