FOX, Adm'r, v. SUPERIOR OIL CO.

No. 29507.    Oct. 8, 1940.

Rehearing Denied Nov. 19, 1940.

*107 P. 2d 185.*

Carmon C. Harris, of Oklahoma City, for plaintiff in error.

Rainey, Flynn, Green & Anderson, of Oklahoma City, for defendant in error.

BAYLESS, C. J.  This action was brought in the district court of Oklahoma county, Okla., by Floyd H. Fox, administrator of the estate of L. L. Cunningham, deceased, against the Superior Oil Company, a corporation, to recover damages for the alleged wrongful death of said deceased. Plaintiff has appealed from an order of the trial court sustaining a demurrer to the evidence. The parties will be referred to as they appeared in the court below.

The record shows that defendant oil company contracted with the Pearson Tubing Service to clean out an oil well belonging to defendant, known as Sibley No. 2. The Tubing Service sent a crew of seven men under L. L. Cunningham, as foreman, with the necessary equipment to do the job. On July 28, 1938, the second or third day of the work, gas escaping from the Sibley No. 2 well became ignited, inflicting burns upon L. L. Cunningham from which he later died.

The tubing crew reached the lease and undertook the contract on the day in question at about 4 o'clock p. m. Defendant desired to have a Reda pump attached to the tubing to be lowered into the well, and the act of running the tubing into the well was postponed until the pump could be delivered. The pump was delivered about midnight, and was attached to the tubing and inserted in the well preparatory to being lowered. While the tubing was being low-ered it was necessary to have the master gate open, and while the master gate was open gas could escape from the well unless the well was killed or a blow-out preventer type of head was used. The failure to kill the well and to use a blow-out preventer type of head, both of which were made obligatory by city ordinance and the doing of which by custom devolved upon the defendant, are set up as the acts of negligence on the part of the defendant that caused the death of deceased. After the Reda pump had been inserted into the well and was in the process of being lowered, the accumulated gas that had escaped from the well during this work ignited and burned deceased to death. We think it is sufficiently established, to meet the legal requirements of causal connection, that the gas could have ignited from the spark, magneto or exhaust of the power unit, and it is the likelihood of such combustion that renders the escape of gas dangerous and leads to the safety ordinances pleaded by plaintiff. All oil field companies and their experienced workers know this.

A great deal of the plaintiff's argument is premised upon the theory that defendant company, through its agents, was in active charge of the well and had complete control and supervision of it at the time of the fire, thereby inferring the requisite legal responsibility for what happened. This argument has the further effect of avoiding the argument of defendant that Tubing Service was an independent contractor insofar as this work was concerned and that deceased was its foreman in full charge of the work and therefore a vice principal.

Plaintiff introduced evidence that the custom of the field was that the lease operator's representative was in charge when a tubing crew was working. If this was the custom, it has no legal significance here, for there was no representative of defendant on this work at or near the time of the accident. Plaintiff had as a witness an employee of defendant who was on the lease at the time of the accident; but it is obvious from his testimony relative to his duties that he had

nothing to do on this well and did not occupy a position in defendant's organization that carried with it any supervisory authority or administrative duties. The superintendent of defendant company was on and off the lease during the time this work was being done, and he testified as a witness for plaintiff, and testified that when he arranged for Tubing Service to do the work he "did not retain the right to direct or control the employees of Pearson Tubing Service in the manner, methods and detail of the work." Insofar as this record is concerned, the plaintiff wholly failed to prove that defendant was in active charge or directed the work in the sense argued from which legal responsibility would flow.

It is equally obvious from the record that Tubing Service was an independent contractor, and as such could perform the services contracted to be performed in the manner and by a method wholly satisfactory to itself, and defendant could look to it only for the completed results. Getman - MacDonell - Summers Drug Co. v. Acosta, 162 Okla. 77, 19 P. 2d 149, and other cases. In this instance all of the men engaged in this work were employees of Tubing Service (except possibly an employee of Reda Pump Company not a party hereto), and that it furnished all of the tools and equipment for the performance of the services (except the head) and deceased was its foreman and representative on the job.

This brings us to a consideration of whether, considering the legal relation of these companies to each other, defendant was guilty of an act or acts of negligence that would render it liable to plaintiff.

As mentioned before, the ordinances of the city required that before the tubing was pulled from this well it should be killed. Wells are killed by pouring a fluid, usually crude oil, into the well until its weight pushes the gas back and in effect "cuts it off." The defendant had the duty of doing this by custom. It did not kill this well because, as shown by the undisputed evidence, the gas sand was above the oil sand and the well could not thus be killed.

The same ordinances required that a head with a blow-out preventer be used to prevent the escape of gas from the well during operations of this nature. A head of this type has a collar of relatively soft rubber that clamps itself about the tubing and prevents the escape of the gas. The undisputed evidence is that it was not practicable to use a head of this type when installing a Reda pump because an electric cable is clamped to the tubing by means of metal clamps, to conduct power to the pump in the hole, and a tight self-clasping type of head would tear the cable from the tubing. Instead, the usable type of head is one of relatively hard rubber that must be manually clamped to the tubing, and loosened and reset as the tubing is moved. The successive loosenings of this clamp permit the gas to escape. This later type of head was used, although it was not of the type prescribed by ordinance.

Deceased knew that this well had not been killed, and he also knew that a type of head was being used that permitted gas to escape from the well, and that these conditions rendered the premises and the working conditions dangerous. Defendant likewise knew this.

The deceased was the vice principal of the independent contractor. It was his duty to see that the premises were in a reasonably safe condition for the doing of the work. It is upon the vice principal that his employer as master relies for proper preparation and care to have the premises in the safe condition required by law. Woelflen v. Lewiston-Clarkston Co. (Wash.) 95 P. 493. It was his duty to reject an instrument furnished by the contractee if said instrument was patently defective or if it did not comply with specifications required by law. Or, if the well had not been "killed" as required by law, it was his duty to see that the law was complied with. In Kill v. Summit Drilling Co., 153 Okla. 197, 5 P. 2d 346, the deceased was

killed in an explosion caused by gas escaping from a well being ignited by the fire in a boiler used in connection with the drilling operations. His employer was charged with negligence in permitting the boiler to be located in close proximity to the well from which gas was permitted to escape. This court denied liability of the employer in that case because the deceased was at the time of the injury in charge of the drilling operations and it was his duty to take such steps as were necessary for his own safety as well as for the safety of others. We said in the opinion in that case:

"* * * We do not think that a representative of the deceased could recover from the company in view of the fact that he was the agent of the company on whom the company necessarily must have relied to keep the place safe."

Assuming that defendant violated the safety ordinance in furnishing a head without a blow-out preventer and in failing to kill the well and that it was negligent in so doing, yet this simply furnished a condition by which the injury was possible. The negligence of the deceased in using the instrument and in pulling the tubing from a well that had not been killed in violation of said ordinance was a subsequent independent act which was the proximate cause of the injury.

The rule announced in Jackson v. Lomas (Mont.) 198 P. 434, that:

"* * * The violation of a penal statute or ordinance by one resulting in injury to another is negligence per se, but such negligence is not actionable where the parties are in pari delicto"

—is here applicable. A number of cases involving the application of this principle of law are collected in an annotation in 20 Neg. & Comp. Cas. Ann. at page 653, et seq. See, also, Tiffany on Death by Wrongful Act, § 66, and sections 469 and 483 of the Restatement of the Law of Torts. The rule is subject to a number of exceptions. See vol. 3, Labatt's Master & Servant (2d Ed.) p. 3569, § 1278. However, the instant case does not come under any of the exceptions. The case of Whitehead Coal Co. v. Schneider, 75 Okla. 175, 183 P. 49, cited by plaintiff, is not applicable to this case. The relationship of master and servant existed between the defendant and the injured party in that case. The statute involved in that case was enacted to protect a class of persons from their inability to exercise self-protective care, which is not true in the present case. The relationship of master and servant did not exist between the defendant and the deceased. He was not subject to the control of the defendant. In violating the ordinance, he did so of his own accord. As vice principal of the independent contractor, it was his responsibility to see that the safety ordinance was complied with. His representative cannot recover from the contractor for injury resulting from his own dereliction. Labatt's Master & Servant (2d Ed.) vol. 1, §§ 34 et seq., page 108 et seq.

The court did not err in sustaining the demurrer to plaintiff's evidence.

Judgment affirmed.

RILEY, OSBORN, GIBSON, and HURST, JJ., concur.