## MAGNOLIA PETROLEUM CO. v. BARNES, Adm'r.

No. 31940. Oct. 8, 1946.

Rehearing Denied April 8, 1947.

179 P. 2d 132.

Walace Hawkins, of Dallas, Tex., Robert W. Richards, of Oklahoma City, and Tom Wallace, of Sapulpa, for plaintiff in error.

Speakman & Speakman and George D. Wilhite, all of Sapulpa, for defendant in error.

RILEY, J. S. A. Barnes, administrator with will annexed of the estate of Paul C. Grady, deceased, sued Magnolia Petroleum Company to recover damages for the wrongful death of deceased. Trial resulted in a verdict and judgment for the plaintiff in the sum of $15,000. Defendant appeals.

Deceased, Paul C. Grady, was a member of a partnership engaged in the business of repairing and selling oil field equipment. Defendant is engaged in the production of petroleum and natural gas. It operated oil and gas wells on the Ben Vance Lease in Creek county. Well No. 7, so located, produced oil and gas. It was equipped with the standard jack pump and about 40 feet of 15½ or 16-inch "surface casing" enclosing a string of 7 or 8 inch "service" casing extending down to the producing

sand. The service casing enclosed tubing through which petroleum was pumped and through which gas flowed. The service casing was suspended by a clamp. This casing extended a few feet above the surface. There was a concrete derrick platform with an opening about two feet square over the well, through which the casing and tubing extended upward. There was a bridge, consisting of sacked rocks, sand, and waste, covering the top of the surface casing and around it. This bridge was from 1 to 1½ to 2 to 2½ feet thick, according to the testimony of the various witnesses.

A space existed between the two strings of casing below the bridge and it extended 40 feet below. Above the platform and connected with the tubing there was a pipe through which the well was pumped, when there was no flow, to the tank. Above the oil flow pipe, another pipe connected with the tubing, through which the gas flowed. Connected with the gas flow pipe there was a vacuum pump which was designed to draw the gas from the well. There was also connected with the tubing a small pipe about an inch in diameter, known as a "bleeder pipe". The purpose of the bleeder pipe is to reveal, upon an opening and examination of its valve, whether the well is producing oil. The bleeder pipe opened directly above the opening in the platform and when the valve in the bleeder pipe was opened, the oil would flow therefrom directly into the space and onto the bridge over the open space between the two strings of casing. At the surface of the bridge there was a drain pipe leading to the slush pit, the purpose of which was to drain away the oil which came from the bleeder pipe. The pump was secured to the concrete platform by bolts embedded in the concrete and extending up through the frame of the pump. This frame was strengthened by braces made of "angle iron" or steel. Vibration caused by the operation of the pump had a tendency to break the bolts securing the frame of the pump to the concrete platform and also to break the

angle iron braces. When this occurred, it was necessary to repair the breaks by welding the broken parts.

On September 17, 1941, deceased was employed by defendant to weld certain of the bolts and the brace in the frame of the pump. He had welded a number of bolts in the platform and while welding an angle iron brace in the frame of the pump, directly over and above the opening in the platform, sparks from the electric welder used ignited gas which had accumulated in the open space, causing an explosion, severely injuring deceased so that he died within five or six hours.

Plaintiff alleged that defendant was negligent in failing to provide deceased a safe place in which to work; and in the operation of the well, it was defendant's duty to deceased to use the highest degree of care against danger; and defendant violated its duty in leaving the open space between the outer and inner casing and in allowing petroleum to run over the bridge above the space, thus permitting gas to accumulate; that because of the bridge over the space, it was hidden from deceased's view so that he could not and did not know of its existence; and the injuries to deceased and his death resulted from the carelessness and negligence of defendant.

Defendant pleaded that deceased, while engaged in the welding operation, was an independent contractor and not an employee of defendant; that deceased was a welder of experience and acquainted with possible dangers and hazards of the work; that he assumed the risk and was guilty of contributory negligence.

Defendant contends the trial court erred in overruling demurrer to plaintiff's evidence; that there was no evidence tending to show primary negligence on the part of the defendant; that the evidence shows deceased was an independent contractor. As to the last specification, there is no dispute. Defendant was an independent contract-

or, but as an independent contractor, deceased was defendant's invitee. It is the duty of the owner to keep the premises reasonably safe for the performance of work by a contractor; this duty applies to conditions which are in the nature of a hidden danger, traps, snares, pitfalls, and the like; they are not ordinarily known to the invitee and if not observed by the invitee, he can exercise no kind of care to avoid injurious consequences of them; the invitee assumes all ordinary risks attendant upon the use of the premises; the owner is under no legal duty to alter the premises so as to eliminate known and obvious dangers. City of Tulsa v. Harmon, 148 Okla., 117, 299 P. 462; 45 C. J. 837. But in Billington Lbr. Co. v. Cheatham, 181 Okla. 402, 74 P 2d 120, it is the rule that:

"Although an invitee assumes all normal, ordinary, and obvious risks attendant upon the use of the premises, the owner thereof, who knows, or in the exercise of reasonable care should know, of their dangerous and unsafe condition owes to such invitee a duty to warn him of the danger where the peril is hidden, latent, or concealed or the invitee is without knowledge thereof." 45 C. J. 875.

The jury found from the evidence the existence of a hidden danger which deceased may not have observed although he may have exercised ordinary care; the jury found that the defendant knew, or should have known, of the hidden danger. The jury's verdict, based on defendant's negligence, necessarily presupposes these findings.

There was evidence of primary negligence on the part of defendant. The defendant is not shown to have warned of the hidden danger and if the defendant neglected to do so, the defendant breached a duty owed to deceased. There was evidence on the part of defendant that the well was equipped and operated in the usual and customary manner, in the field, but the whole of the evidence on the point is in conflict. Witnesses testified that the custom was to fill the open space between the outer and inner casing, to prevent the accumulation of gas. The evidence of defendant shows the deceased, on two previous occasions, within a year before the injury, welded the equipment without an explosion and there had been no indication of gas forming around the well. Defendant contends the condition existing at the time of the explosion was of recent origin and had not existed long enough for defendant's notice. There is no evidence that deceased had ever welded a brace in the frame of the pump directly over the opening in the concrete platform. The conditions under which oil might seep through the bridge and accumulate in the open space between the casing existed for eight years, according to plaintiff's evidence, accepted by the jury. The issue of negligence depended upon whether an experienced operator, with reasonable prudence, would have constructed and operated such an oil and gas well. The issue was one of fact for the jury, as was the question of proximate cause of the injury.

To constitute proximate cause, there must be a natural, direct, and continuous sequence between the negligent act and the injury so that, but for the act, the injury would not have occurred. Was there an unbroken connection between the wrongful act and the injury so as to be a continuous operation? Did the facts constitute a succession of events leading to the injury? No new or independent cause intervened between the omission and the injury. 38 Am. Jur. 704; Louisville & Nashville R. R. Co. v. Maddox et al., 236 Ala. 594, 183 So. 849, 118 A. L. R. 1318. In the cited case it was held:

"The proximate cause of an injury is the primary moving cause which, in the natural and probable sequence of events, and without the intervention of a new and independent cause, produces the injury."

But defendant claims it merely created a condition by which the injury was possible and that deceased's act result-

ed in the damage. Munroe, Adm'r, v. Schoenfeld & Hunter Drilling Co., 178 Okla. 149, 61 P. 2d 1045; St. Louis & S. F. Ry. Co. v. Gilbert, 165 Okla. 591, 95 P. 2d 123; Fox v. Superior Oil Co., 188 Okla. 165, 107 P. 2d 185; Steenbock v. Omaha Country Club, 110 Neb. 794, 195 N. W. 117. None of the decisions relied upon is decisive. The deceased was doing exactly that which he was engaged to do, namely, welding the broken parts of the frame of the pump jack. In the Munroe Case, supra, deceased did not perform the act he was engaged to perform. He was suiting his own convenience. He selected the convenient place to park his automobile, endangered and injured himself in a way not connected with his duties.

In the Gilbert Case, supra, the act of a third person produced the injury; the defendant was not negligent.

In Fox v. Superior Oil Co., supra, the injured person was the vice principal of an independent contractor; his duty was to cause the premises to be reasonably safe for himself and others; his failure caused the injury.

In the Steenbock Case, supra, the injury was not the result of the negligence of the owner of the premises. It resulted from the negligence of the operator of an automobile in running into a pole which lay across the roadway.

There is no showing in the case at bar that the deceased was guilty of negligence; but if he was so guilty, there was primary negligence on the part of the defendant, so deceased's negligence, if any, was merely contributory negligence. That issue was presented to the jury under appropriate instructions; the jury, as to contributory negligence, must have found the deceased not guilty. City of Altus v. Wise, 193 Okla. 288, 143 P. 2d 128; McDuff v. McFarland, 185 Okla. 569, 95 P. 2d 636; L. & N. R. R. Co. v. Maddox, supra.

The trial court refused a requested instruction as to "proximate cause". It reads:

"The plaintiff must prove by a preponderance of the evidence that the negligence of the defendant, if any, without negligence on the part of deceased, was the proximate cause of the injury sustained by the deceased."

The requested instruction is erroneous. It was properly refused. The instruction would have required plaintiff to prove that there was no negligence on the part of the deceased. It is well settled that contributory negligence is an affirmative defense and the burden of establishing contributory negligence is upon the defendant.

It is not error to refuse a requested instruction which cannot be given without correction. Shell Petroleum Co. v. Wood, 168 Okla. 271, 32 P. 2d 879; Shell Petroleum Co. v. Wood, 168 Okla. 274, 32 P. 2d 882; M., O. & G. Ry. Co. v. Collins, 47 Okla. 761, 150 P. 142.

The "other" cause, to be sufficient to relieve a person from the consequence of his own negligence, must be such as to sever the connection between the original negligence and the injury so as to "insulate" the injury, 38 Am. Jur. 724, 725. It is not enough to say that it is another, independent cause. It must be an efficient, intervening cause. The requested instruction contains other matter, but from what we have said, it is apparent that there was no error in refusing the requested instruction.

It is urged the court committed error in failing to define the term "proximate cause".

In City of Stilwell v. Bone, 195 Okla. 325, 157 P. 2d 459 we held it is not reversible error to fail to give an abstract definition of the term "proximate cause", when the complaining party requests no such instruction and where the question of remote or intervening cause is not in issue. But here the defendant presented a requested instruction purporting to define the term. The requested instruction was properly refused in the form presented. Was it a sufficient request to the court for a definition of the term?

In Missouri, K. & T. Ry. Co. v. Perino, 118 Okla. 138, 247 P. 41, we held:

" . . . The court should define proximate cause to enable the jury to determine whether the negligence alleged was the proximate cause, since in order for negligence to create liability, it must be the proximate cause of the injury."

See, also, Hoyt v. St. Louis & S. F. Ry. Co., 153 Okla. 7, 4 P. 2d 747. But, as pointed out in Stroud v. Tompkins, 193 Okla. 483, 145 P. 2d 396, it is not necessary to define the term in every negligent case and particularly where the facts alleged, if proved, would establish as a matter of law that the defendant's negligence was the proximate cause of the injury. In that case the trial court, instead of defining proximate cause, stated that if the jury found certain facts it should find for plaintiff. The rule was stated in 45 C. J. 921:

"It is not necessary that the court should define proximate cause . . . Nor is it necessary that the definition, if given, should follow any particular form . . . "

In Missouri, K. & T. Ry. Co. v. Perino, supra, the trial court, in a general way, instructed the jury as to proximate cause: that if it could be said that all the evidence produced by plaintiff together with all the inferences and conclusions to be reasonably drawn therefrom, was sufficient to establish a causal connection between the alleged negligence of defendant and the injury to deceased, it would be sufficient for a verdict and judgment. In the instant case, there is uncontradicted evidence sufficient to establish a causal connection between the negligence of defendant and the injury to plaintiff's testate. That is sufficient. In City of Stilwell v. Bone, supra, this court said:

"While it is customary, and better practice, for the court to define the terms 'negligence' and 'proximate cause' (Missouri, K. & T. Ry. Co. v. Perino, 118 Okla. 138, 247 P. 41, 47 A. L. R. 283), it is not reversible error to fail to do so where, as here, the instructions as a whole correctly advise the jury as to the specific issues they are to pass upon, the standard of care required, the duties the parties owe each other, and state the elements constituting actionable negligence, where there is no question of a remote or intervening independent cause involved requiring a definition of proximate cause, and where the instructions as a whole convey to the jury the meaning of said terms."

The request, such as it was, added little, if anything, to the duty of the trial court. The instructions as a whole correctly submitted to the jury the specific issues, the standard of care, the elements constituting actionable negligence and contributory negligence. There was no remote or intervening cause of the injury and resultant damage. No substantial duty enjoined upon the trial court was omitted; no reversible error was committed.

But it is said the trial court erred in the admission of evidence. We don't think so.

It is urged that the court erred in its instruction concerning the degree of care required in the handling of a dangerous agency, natural gas. It is urged that there was no evidence that defendant was handling gas. But the evidence is abundant that the manner in which defendant allowed the oil to accumulate in the space between the casing would and did, tend to cause the dangerous agency. Natural gas did accumulate and there was an explosion as the result of the accumulation. The instruction is not erroneous.

Instruction No. 6 directed that it was incumbent upon the defendant to possess and exercise a knowledge of the dangerous qualities, if any, connected with the oil and gas well question. The defendant objected to the instruction and urges error in it.

Restatement of the Law of Torts, Vol. II, p. 944, says:

"A possessor who holds his land open to others for his own business purposes, must possess and exercise a knowledge of the dangerous qualities of the place itself and the appliances provided therein, which is not required of his patrons."

The instruction is fairly within the rule stated. It was not in error.

It is contended that the court erred in instruction No. 8. It instructed the jury that deceased was invited to come upon the land of defendant. It is complained that the instruction should have said that deceased was an independent contractor. An independent contractor may be an invitee. The rule applicable to an invitee may apply to an independent contractor. It was not necessary to instruct that deceased was both an invitee and an independent contractor.

The instructions as a whole presented the law of the case to the jury.

Affirmed.

GIBSON, C. J., HURST, V. C. J. and OSBORN, WELCH and DAVISON, JJ., concur.