Maudie WEAVER and Harold V. Weaver,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 7563.

United States Court of Appeals
Tenth Circuit.

July 9, 1964.

Glenn A. Young of Young, Young & Young, Sapulpa, Okl. (J. Rex Spurr, Shawnee, Okl., on the brief), for appellants.

Phillips Breckinridge, Asst. U. S. Atty. (John M. Imel, U. S. Atty., on the brief), for appellee.

Before MURRAH, Chief Judge, PICKETT and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellants, Maudie Weaver and her husband, brought separate suits in the court below against appellee, under the Federal Tort Claims Act,[1] to recover damages for personal injuries allegedly received by her in a fall that occurred on property owned by the United States. The cases were consolidated and tried to the court, resulting in a judgment in favor of the United States, and this appeal followed.

In February, 1959, the United States acquired an option to purchase a tract of real estate located in Mannford, Oklahoma, for the purpose of constructing the Keystone Reservoir Project on the Arkansas River. The property was owned at that time by J. O. and Josephine Cavin, who had operated a cafe on the premises since 1955. In March, 1959, the purchase was completed and the Cavins executed and delivered a general warranty deed conveying the property to the United States. However, in accordance with the Government's customary policy in such situations, the United States did not take possession or control of the property but allowed the Cavins to remain in possession without rent or written agreement during 1959. Thereafter, annual lease agreements were executed for each year from 1960 until 1962. The Cavins were in possession, after the conveyance to the United States, and continued to operate their cafe until 1962.

On November 6, 1959, Maudie Weaver was in the cafe for a cup of coffee and, upon leaving, she fell and injured her knee. There is a conflict in the evidence as to how the accident occurred. She testified that " * * * it felt like some loose brick turned, and my foot just turned on this loose brick and threw me on the sidewalk." However, Mrs. Cavin testified that shortly after the accident Mrs. Weaver stated that: " * * * my shoe come [sic] off and I fell on the sidewalk and hit my knee." This latter testimony was substantially corroborated by another witness.

The evidence shows that the cafe is so situated that the front thereof is the third side of a triangle with the sidewalks being the other two sides. The triangular area is covered with bricks from the sidewalks to the steps leading into the cafe and a customer or patron must step on the bricks when entering or leaving the cafe. The accident in question occurred when Mrs. Weaver stepped down onto the bricks as she was leaving the cafe.

The lower court found that the United States had never taken actual control or possession of the property, did not know and had no reason to know of any defective condition of the steps leading to or from the cafe and there was no act of omission or commission by it that caused or contributed to the fall and resulting injury to Mrs. Weaver. The court also made a negative finding to the effect that the " * * * evidence offered by the plaintiff Maudie Weaver was insufficient to establish her allegations of negligence. * * * "

■ We are, of course, bound by the trial court's findings of fact unless they are clearly erroneous.[2] If the evidence

1. 28 U.S.C.A. §§ 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412 and 2671-2680.

2. Western Distributing Company v. United States, 10 Cir., 318 F.2d 853.

is susceptible to different inferences, the inference-drawing is for the trial court and not this court.[3]

The Federal Tort Claims Act is designed to render the United States liable for its torts in essentially the same manner and to the extent as a private individual would be, in like circumstances, under the law of the place where the wrong occurred.[4] Under Oklahoma law, where premises are leased for public or semi-public purposes and at the time of leasing there is a condition which renders the premises unsafe for the purpose intended and the landlord knows, or by the exercise of reasonable diligence should have known of the condition, he is liable to his tenant's invited business patrons or customers who are injured by reason of such unsafe condition.[5] But, the landlord's liability in this respect is limited by the rule that his duty to keep the premises reasonably safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like in that they are not known to the invitee and would not be observed by him in the exercise of ordinary care.[6] An invitee assumes all normal or ordinary risks attendant upon his use of the premises and the owner is under no legal duty to reconstruct or alter premises so as to obviate known and obvious dangers. The owner is not liable for injuries to an invitee that arise from a danger which was obvious or should have been observed in the exercise of due care.[7] In short, recovery is allowed in Oklahoma only where the unsafe condition is known to the owner and not to the invitee.[8]

The evidence in this case, including the photographs admitted into evidence, clearly shows that there was no hidden danger here. Nor was there anything inherently dangerous about the sidewalks and brick-covered area. The whole situation was, or should have been, obvious to Mrs. Weaver, who testified that she had been going to the cafe about once a week for a period of some 15 years and that the bricks and building had been there for as long as she could remember. Mrs. Weaver, therefore, had superior knowledge of the condition of the premises when compared with appellee. There is nothing in the record to indicate that appellee had actual knowledge of any unsafe condition other than the fact that, prior to acquiring the premises, they had been inspected and appraised by its agents. Certainly, there is no evidence that it had been notified of an unsafe condition. We think this case is controlled by the recent decision of Jackson v. Land, Okl., 391 P.2d 904, where, under similar circumstances, the Oklahoma Supreme Court held that actionable negligence had not been established. If anything, the facts are even stronger in this case for non-liability since appellee was not in possession and control of the premises. In the Jackson case, the owner did exercise possession and control of the premises.

Affirmed.

3. Watts v. Roberts, 10 Cir., 282 F.2d 565.

4. Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492; United States v. Gregory, 10 Cir., 300 F.2d 11; Alaniz v. United States, 10 Cir., 257 F.2d 108.

5. Schlender v. Andy Jansen Company, Okl., 380 P.2d 523.

6. Jackson v. Land, Okl., 391 P.2d 904; Safeway Stores, Inc. v. McCoy, Okl., 376 P.2d 285; Skelton v. Sinclair Refining Company, Okl., 375 P.2d 948; Safeway Stores, Inc. v. Sanders, Okl., 372 P.2d 1021; Magnolia Petroleum Co. v. Barnes, 198 Okl. 406, 179 P.2d 132; City of Tulsa v. Harman, 148 Okl. 117, 299 P. 462.

7. Safeway Stores, Inc. v. McCoy, supra; Skelton v. Sinclair Refining Company, supra; Magnolia Petroleum Co. v. Barnes, supra; City of Tulsa v. Harman, supra.

8. Jackson v. Land, supra; Skelton v. Sinclair Refining Company, supra.