**SOUTHWESTERN INVESTMENT COM-PANY, a corporation, Appellant,**

v.

**CACTUS MOTOR COMPANY, Inc., a corporation, and Parker Cullom, Appellees.**

No. 8169.

United States Court of Appeals
Tenth Circuit.

Jan. 3, 1966.

Harl D. Byrd and G. Stanley Crout, Santa Fe, N. M. (Bigbee & Byrd, Santa Fe, N. M., on the brief), for appellant.

James T. Martin, Jr., and R. C. Garland, Las Cruces, N. M. (R. Wilson Martin, Las Cruces, N. M., on the brief), for appellees.

Before MURRAH, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

After trial without a jury judgment was entered in favor of the appellees-plaintiffs and against the appellant-defendant on account of payments made by the plaintiffs to the defendant for insurance which was not obtained. The case was begun in New Mexico state court and was removed to federal court because of diversity.

Appellee Cullom was president of appellee Cactus Motor Company. Cullom, as an individual operating under several trade names, and Cactus were in the business of selling house trailers at various locations in New Mexico and in El Paso, Texas. Appellant Southwestern Investment Company was in the finance business and among other things purchased at discount conditional sales contracts. Cullom and Cactus, herein referred to as the dealers, sold trailers under such contracts payable in monthly installments over periods running to five years. They assigned these contracts to Southwestern with recourse at an agreed discount.

The controversy relates to payments made by the dealers to Southwestern for Vendor's Single Interest (VSI) insurance. This insurance protects a vendor from liability under a recourse agreement for loss to the security caused by various perils, such as embezzlement, concealment, and conversion, which are not covered by insurance purchased by the vendee. The dealers insisted on this protection. The rates for VSI insurance were $10 a year on new trailers and $12 a year on used trailers.

In the spring of 1957 Southwestern agreed with the dealers that as part of the consideration for the dealers discounting to it the conditional sales contracts it would secure VSI insurance for the benefit of the dealers. In the period April 30, 1957, to July 31, 1961, South-western purchased from the dealers at a discount 259 conditional sales contracts on house trailers. On each a payment was made for VSI insurance. Endorsements were made on 56 policies issued by Commercial Insurance Company to cover VSI for the benefit of Southwestern. Beginning about September, 1957, Southwestern stopped the VSI coverage with Commercial and thereafter until July 31, 1961, collected from the dealers the payments for VSI on 203 contracts without purchasing any VSI insurance. In the summer of 1961 Southwestern asserted a claim against Cullom under his recourse liability and he answered that he was protected by VSI insurance. It then developed that the insurance had not been written and this suit followed. The trial court gave judgment for Cactus in the sum of $7,630 and for Cullom in the sum of $8,152.20.

■■■ The recurrent theme of the lengthy and complex argument of Southwestern is that the record does not sustain the findings of the trial court. Nothing will be gained by a recitation of the conflicting evidence. The trial court believed the testimony presented by the dealers and drew reasonable inferences from the documents received as exhibits. The trier of the facts—not the appellate court—determines the credibility of witnesses.[1] An appellate court will not upset reasonable inferences drawn by a trial court from admissible evidence.[2] The clearly erroneous rule[3] determines the sufficiency of the evidence to support the findings. From our examination of the record we are convinced that the findings are supported by the evidence and may not be disturbed on appeal.

■■ Acceptance of the findings makes unnecessary any detailed discussion of the claims of substantial performance, absence of fraud, acquiescence, and lach-

1. Ruth v. Utah Constr. & Mining Co., 10 Cir., 344 F.2d 952, 953; F.R.Civ.P. 52 (a).

2. Weaver v. United States, 10 Cir., 334 F.2d 319, 320–321; Watts v. Roberts, 10 Cir., 282 F.2d 565, 566.

3. Tobin Const. Co. v. United States, 10 Cir., 343 F.2d 422, 425; State Farm Mut. Auto. Ins. Co. v. Lehman, 10 Cir., 334 F. 2d 437, 439.

es. Substantial performance did not occur because Southwestern agreed to furnish VSI insurance and did not do so. Southwestern was not an insurance company and was not authorized to write insurance. Its alleged unilateral acceptance of the VSI risk did not relieve it of the obligation to take out the insurance. The court found fraud and pointed out that Southwestern knew that the dealers would cease doing business with it if the VSI insurance was not obtained. Fraud occurs when there is concealment of a material fact with intent to deceive.[4] The issues of acquiescence and laches depend on the credibility of the witnesses and the court believed the testimony for the dealers.

■ Southwestern says that the claims are barred by the 4-year New Mexico statute of limitations.[5] The failure to obtain VSI insurance began in 1957 and the transactions ended in 1961. The suit was filed in 1963. The court found that the dealers did not learn of Southwestern's failure to obtain the VSI insurance until September, 1961. The New Mexico statutes provide that in fraud cases the cause of action is not deemed to have accrued until the fraud is discovered.[6] This accords with the rule that fraudulent concealment of a cause of action tolls a statute of limitations.[7] We agree with the trial court that the statute of limitations did not foreclose the dealers' claims.

■ Southwestern attacks the award of damages on many fronts without concentration on any single objective. The method of presentation makes difficult any distinction between feints and intended solid blows. The trial court based its award on premiums paid for VSI insurance plus a discount figure. Southwestern says this improperly includes 56 transactions on which VSI insurance was obtained. The trouble is that in those instances the insurance was obtained for and made payable to Southwestern and assigns. This did not protect the dealers. They were not assignees of Southwestern. The assignments all ran the other way.

■ We see nothing wrong in the averaging of the discount rate. The terms of the conditional sales contracts varied from about one and one-half to five years. Although the figure used by the trial court may not have been precise, it was fair. When there is no uncertainty as to whether the rights of a plaintiff are invaded, it is not essential that the amount of damages be proved with absolute certainty.[8]

■ Southwestern says that the measure of damages is the loss to the dealers and that no loss occurred. Southwestern is not helped by the rule that when a person pays an agent a premium for insurance which is never written and a loss occurs, the agent is liable for the loss. Here the dealers paid for VSI protection by insurance and they did not receive that protection. Southwestern pocketed the money and was unjustly enriched by the amount of the payments. No consideration need be given to the assertion that the dealers directly or indirectly passed the amount of the premiums on to the purchasers of the trailers. Their installment contracts called for specified sums. Nothing suggests that the dealers were not acting within their rights when they applied part of such sums to protect themselves from recourse liability. We are here concerned with the transactions between the dealers and the finance company—not with the transactions between the dealers and the trailer purchasers.

4. Strong v. Repide, 213 U.S. 419, 430, 29 S.Ct. 521, 53 L.Ed. 853; Charles Hughes & Co. v. Securities and Exchange Commission, 2 Cir., 139 F.2d 434, 437, certiorari denied 321 U.S. 786, 64 S.Ct. 781, 88 L.Ed. 1077.

5. 1953 Comp.N.Mex.Stat.Ann. § 23-1-4.

6. 1953 Comp.N.Mex.Stat.Ann. § 23-1-7.

7. Public Service Co. of New Mexico v. General Electric Co., 10 Cir., 315 F.2d 306, 311, certiorari denied 374 U.S. 809, 83 S.Ct. 1695, 10 L.Ed.2d 1033. Cf. Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743.

8. Stern v. Dunlap Co., 10 Cir., 228 F.2d 939, 943.

■ Southwestern complains that the award of damages to Cullom exceeds the amount requested in his prayer for relief. The point concerns the allocation of the various trailer transactions among the operations of Cullom and Cactus. We believe the trial court reached the right result. Under Rule 54(c), F.R.Civ.P., a judgment shall grant the relief to which a party is entitled even though that relief is not demanded in the pleadings and Rule 15(b) says that failure to amend does not affect the result.[9]

We have examined the other points raised by Southwestern and find that none have sufficient merit to justify discussion.

Affirmed.

---

9. See United States for the Use of Bachman & Keffer Const. Co. v. H. G. Co-zad Constr. Co., Inc., 10 Cir., 324 F.2d 617, 620.