Kathleen BROWN, Plaintiff in Error,

v.

TULSA EXPOSITION AND FAIR CORPORATION, Defendant in Error.

No. 41049.

Supreme Court of Oklahoma.

June 27, 1967.

Floyd L. Walker, Tulsa, for plaintiff in error.

Alfred B. Knight, Tulsa, for defendant in error.

JACKSON, Chief Justice.

This is an appeal by plaintiff, Kathleen Brown, from an order sustaining the motion of defendant (Tulsa Exposition and Fair Corporation) for directed verdict in an action for damages resulting from plaintiff's fall on an ice skating rink in Tulsa, and from the order overruling plaintiff's motion for new trial.

Plaintiff argues generally under two propositions that the court erred in sustaining the motion for directed verdict under the following well recognized rule:

> "In passing upon a demurrer [to the evidence] or motion for directed verdict, the trial court should consider as true all the evidence favorable to the party against whom the demurrer or motion is directed, together with all inferences reasonably to be drawn therefrom, and should disregard all conflicting evidence favorable to the demurrant or movant." Price v. Smith, Okl., 373 P.2d 242.

With that rule in mind, we now review the evidence, considering as true all evidence, and permissible inferences therefrom, favorable to plaintiff, and disregarding all conflicting evidence favorable to defendant.

The evidence discloses that plaintiff had been a regular paying patron of the skating rink during the season in 1960, as well as during the time the rink was open in the 1961 season. The rink opened about November 1, 1961, and plaintiff was injured on November 26, 1961. She had been skating about two times a week during November, 1961, prior to her injuries.

Her evidence discloses that she had been skating during the afternoon of November 26th, for approximately one hour and roughly estimated that she had skated around the rink twenty or thirty times. She had encountered no difficulty with the con-

dition of the ice during this period. A thirty minute intermission was then called during which time the ice was smoothed and re-surfaced with a "Zamboni".

The Zamboni was described as a machine mounted upon a jeep chassis with a blade on the front which shaved the ice; a hoisting apparatus which lifted the shaved ice or snow into the vehicle; and a hot water tank which deposited a layer of hot water on the ice behind the machine as it moved forward. The weight of this machine was estimated at 5000 pounds.

About ten minutes after the intermission, and after plaintiff and her eight year old daughter had skated around the rink about three times, the toe of her left skate (according to her testimony) caught in a hole in the ice and she fell, breaking her leg.

Plaintiff described the hole in the ice as approximately one inch deep and about two inches in width. She also testified that there was a shallow puddle of water around the hole "approximately this large (indicating)." She had not seen this hole and water prior to the use of the Zamboni and only discovered it just as she hit the hole and her skate caught in it. She testified that this hole was in the regularly travelled area of the rink.

Plaintiff's daughter testified that she saw the hole in the ice and that it had a puddle of water around it "about like that (indicating)".

Defendant's witness, Mr. R, in cross examination testified that he was one of the employees at the rink at the time of the accident. He testified that it was impossible for the Zamboni to cut a hole in the ice as described by the plaintiff. However, he further testified that the Zamboni could cause a depression in the ice some eighteen inches to two feet in diameter, but that the water in the depression would run through cracks in the ice into the sand below the ice.

Mr. T, Ice Rink Supervisor, in testifying for defendant, testified that on infrequent occasions "soft spots" would develop on the ice and that "we always watched" for them.

He testified that the Zamboni was so heavy that it would sometimes break down the ice above an air pocket and cause a hole in the ice, in which case the water that had been "following" the Zamboni would collect in the hole. He also testified that the running of the Zamboni was the most common cause of having a hole develop in the ice, and that following the use of the Zamboni an inspection of the ice was always made. However, he testified that on the occasion when plaintiff fell he had made no inspection of the ice following the use of the Zamboni, but that the inspection was made by Mr. R.

Mr. R, the "Official on the Ice", testified that he made no inspection of the ice following the use of the Zamboni prior to plaintiff's fall, and did not know whether anyone else did or not. He further testified that the machine was more prone to break through the ice during the first part of a season before the ice is "built up"; that "our first three to four weeks is our trouble period as far as falling through." Plaintiff's accident happened during the fourth week of the season.

The only suggestion we have found in the record that the hole in the ice could have been caused by a patron of the rink came in cross examination of plaintiff. She was asked if she had not seen "figure skaters" dig out holes in brittle ice "when they jump in the air and come down and hit it hard." Her answer was "No".

In considering the propriety of a directed verdict in this case it is admitted that there was a hole in the ice and that it was surrounded by a puddle of water after the use of the Zamboni. It does not appear from the evidence that the hole in the ice and a depression sufficient to hold a puddle of water existed prior to the use of the Zamboni. There is no evidence that the depression in the ice could have been caused by a patron either before or after the use of the Zamboni. It follows that the asserted defective condition in the ice was more probably caused by the use of the Zamboni

than from any other cause disclosed by the record.

In argument to sustain the directed verdict the defendant states that the defendant was not an insurer of plaintiff, and that the defendant was bound by the same reasonable care as any business invitor to keep the ice reasonably safe and suitable for the purposes intended, citing 168 A.L.R. 896.

■ It is also argued that the burden of proof was upon the plaintiff to prove either actual or constructive notice of the dangerous condition before there is an issue of actionable negligence. This argument would come with more force if the evidence showed that this dangerous condition was caused by a patron of the skating rink. In the instant case it appears more probable that the condition was caused by defendant's operation of the Zamboni. Other jurisdictions have held that where the dangerous condition is created by the party claimed to be liable no further notice to such party is necessary. Vegodsky v. City of Tucson, 1 Ariz.App. 102, 399 P.2d 723; Falconer v. Safeway Stores, Inc., 49 Wash. 2d 478, 303 P.2d 294. In Magnolia Petroleum Co. v. Barnes, 198 Okl. 406, 179 P.2d 132, we quoted with approval Restatement of the Law of Torts, Vol. II, p. 944, as follows:

"A possessor who holds his land open to others for his own business purposes must possess and exercise a knowledge of the dangerous qualities of the place itself and the appliances provided therein, which is not required of his patrons."

In St. Louis-S. F. Ry. Co. v. Gilbert, 185 Okl. 591, 95 P.2d 123, we quoted The American Law Institute's Restatement of the Law, Torts, Vol. 2, page 938, § 343, as follows:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as

involving an unreasonable risk to them. * * *".

We quoted therein Restatement commentary, as follows:

"Such a visitor is entitled to expect that the possessor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions."

■ In the instant case the evidence shows that during the first four weeks of operation the Zamboni was more prone to break through the ice that at other periods. At the time of the accident the operators of the rink considered it necessary to inspect the ice following the use of the Zamboni. Under the evidence in this case the jury could have concluded that no inspection was made following the use of the Zamboni, or that if an inspection was made it was not made with reasonable care considering the dangers involved. Hence it was for the jury to determine, under proper instructions, whether the defendant knew or should have known of the defective condition in the ice, and the probability of injuries resulting therefrom.

■ We have carefully considered all of the arguments made by defendant in its briefs and have concluded that a prima facie case of negligence was established by the plaintiff. In Towery v. Guffey, Okl., 358 P.2d 812, wherein plaintiff was injured by other patrons in the skating rink, we quoted from American Jurisprudence as follows:

"The law does not require every fact and circumstance which make up a case of negligence to be proved by direct and positive evidence or by the testimony of eye witnesses. Proof of the fact of negligence may rest entirely in circumstances; in other words, circumstantial evidence alone may authorize a finding of negligence. Hence, negligence may be inferred from all the facts and attendant circumstances in the case, and where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inference from

established facts, a prima facie case is made. 38 Am.Jur., Sec. 333, p. 1032."

The judgment is reversed and the cause is remanded to the trial court with directions to grant plaintiff a new trial.

IRWIN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, BERRY, LAVENDER and McINERNEY, JJ., concur.

HODGES, J., dissents.